UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
UNITED STATES                                       :
                                                    :        S5 11 Cr. 1032 (PAE)
                                                    :
              -v-                                   :        OPINION & ORDER
                                                    :
                                                    :
CARLOS URENA, JUAN FRANCO, and LIMET                :
VASQUEZ et al.,                                     :
                                                    :
                            Defendants.             :
                                                    :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Three defendants in this multi-defendant racketeering case (Carlos Urena, Juan Franco,

and Limet Vasquez) have moved for an order requiring the Government to reveal the redacted

portions of certain recorded 911 calls that the Government has provided to them in discovery.

These calls relate to a murder charged in the Indictment as a predicate act of racketeering.  Dkt.

730, 754.  The redactions from these recordings consist of the names, and other identifying

information, of the person(s) who placed these calls.  Following defendants' initial request, the

Government produced some of the withheld information, leaving in dispute only the redactions

from one 911 call, identified here as call number 24.  Defendants argue that 911 calls such as call

number 24 are subject to the disclosure requirements of Federal Rule of Criminal Procedure 16,

that call number 24 meets the requirements of Rule 16, and that the recording of call number 24

should therefore be produced in its entirety to the defense.  The Government argues in response

that 911 calls are not required to be produced under Rule 16, because they are instead subject to

the terms of the Jencks Act, 18 U.S.C. § 3500, under which pretrial disclosure of statements by

government witnesses is not required.  Alternatively, the Government argues, even if such calls

are covered by Rule 16, it was appropriate for the Government to withhold the name and other

identifying information as to the caller of call number 24, either because the name is not material

to the defense or because the interests of protecting the caller's safety justified the withholding.

For the reasons that follow, the Court holds that call number 24 is subject to Rule 16 and

is not subject to the Jencks Act, but that the sole redaction at issue, involving identifying

information as to the 911 caller, was justified as a valid means of assuring the caller's safety.

Defendants' motion is therefore denied, without prejudice to defendants' right to pursue such

discovery later in the case upon an appropriate showing of need sufficient to outweigh the

Government's legitimate concerns about witness safety.

## I.      Background

The fifth Superseding Indictment ("Ind.") in this case (Dkt. 239) was returned on

February 6, 2013.  Relevant here, Count One charges Urena, Franco, and Vasquez, among

others, with racketeering, in violation of 18 U.S.C. § 1962(c), in connection with a gang

identified as the Bronx Trinitarios Gang ("BTG").  Ind. ¶¶ 1–71.  Count Two charges these same

defendants with participation in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d),

again with the BTG identified as the racketeering enterprise. *Id*. ¶¶ 72–83.  Among the predicate

acts of racketeering identified in the Superseding Indictment are the conspiracy to murder, and

the murder of, Ka'Shawn Phillips in Yonkers, New York, on September 3, 2005.  *Id.* ¶¶ 9–11.

Urena, Franco, and Vasquez, among others, are named in connection with those alleged

racketeering acts.

By letter dated March 29, 2013, Urena's counsel, upon learning that there were

recordings of 911 calls made in relation to the Phillips murder, asked the Government to disclose

those recordings.  Dkt. 730.  The Government then requested recordings of such calls from the

Westchester County District Attorney's Office.  Dkt. 788.  On May 17, 2013, Urena's counsel, stating that he had not received these recordings, requested a conference with the Court to discuss the matter.  Dkt.  730.  On May 24, 2013, the Government provided to counsel for the three defendants an electronic file containing recordings of 911 calls, which it had requested and received from the Westchester County District Attorney's Office.  Dkt. 755, 788, 811.  The file contained recordings of 26 phone calls, which the Government represents are all the calls it received.  Dkt. 754.  From these calls, however, the Government had redacted names and other personal identifying information as to "a few of the callers."  Dkt. 788.

On June 3, 2013, the three defendants, in a joint letter submitted by Urena's counsel, objected to these redactions.  They argued that the call was required to be produced, in its entirety, under Rule 16, and asked the Court to order the Government to promptly provide an unredacted copy of all the 911 calls.  Dkt. 754.

On June 10, 2013, the Government responded.  It argued that Rule 16 does not require it to produce 911 calls to defense counsel at all and that it had voluntarily produced the recordings of the various 911 calls to defense counsel, in order to assist them in their preparation for trial.  Dkt. 755.  Instead, the Government argued, the Jencks Act, 18 U.S.C. § 3500, governs production of witness statements, and production of Jencks Act material is not required until the witness's testimony at trial.  *Id.*  Further, the Government noted, in cases involving heightened safety concerns, it has waited until the evening before or the morning of the witness's testimony to disclose the name of a civilian witness, and it cited cases in which courts in this District have approved this procedure as consistent with the Jencks Act.  *Id.*  In any event, the Government stated, the dispute in this case had narrowed:  It had now produced additional caller identification

information.  This production left only one caller's identifying information redacted from call

number 24.  *Id*.; *see also* Dkt. 788.

On June 20, 2013, defense counsel responded and requested a conference, Dkt. 762,

which the Court held on July 1, 2013.  At the end of the conference, the Court asked the parties

to submit letter briefs addressing whether production of the 911 calls was required by Rule 16.

Both parties submitted letters addressing that issue.  Dkt. 786 (defense letter), 788 (Government

letter).  Defendants' letter added that defendants also requested unredacted portions of the "sprint

runs," which are short summaries of the 911 calls.  The Government had produced these sprint

runs to defense counsel in January 2013 but redacted the same identifying information.  Dkt.

786.

On August 22, 2013, the Court directed the Government to provide it with a tape

recording of call number 24, the remaining redacted call.  The Government has aptly described

that call as follows:  "The caller, in near hysterics, tells the 911 operator that she is pregnant, that

there is a hoard [sic] of men gathering outside her basement apartment, and that she believes that

they are going to harm her and her family members."  Dkt. 788.  The call was placed about 15

minutes after the Phillips murder.  The identifying information redacted from the call reflects

that the address given by the caller was near the site of the murder.  The caller reports that the

men outside her window say that they just killed a man on her block.

## II.   Discussion

Federal Rule of Criminal Procedure Rule 16(a)(1)(E) sets out the rights of an indicted

criminal defendant to production of documents and objects from the government.  A defendant

may request "books, papers, documents, data, photographs, tangible objects, buildings or places

or copies of portions of any of these items."  *Id.*  The government must produce a requested item

if it is "within the government's possession, custody, or control" and either "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." *Id.* An item is "material to preparing the defense" under Rule 16 "if it could be used to counter the Government's case or bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180–81 (2d Cir. 1993). Although Rule 16 does not specifically enumerate recordings of phone calls as an item within its scope, such recordings, whether embodied in tapes or CDs or elsewhere, are, at a minimum, "tangible objects" which the defendant may request. *See United States v. Terry*, 702 F.2d 299, 312–13 (2d Cir. 1983) (treating tapes of conversations as tangible objects covered by Rule 16); *United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994) ("[T]elephone records are discoverable objects to which the defendant is entitled."); *United States v. Feola*, 651 F. Supp. 1068, 1144 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989) ("[T]elephone records are clearly included under this rule as discoverable objects to which defendants are entitled."); *cf. United States v. Nixon*, 418 U.S. 683, 700 (1974) (Fed. R. Crim. P. 17, which refers to "books, papers, documents or other objects," includes tapes of conversations); *United States v. Tucker*, 249 F.R.D. 58, 62 (S.D.N.Y. 2008) (Rule 17 applies to telephone recordings).

Rule 16, however, contains an important limitation. By its terms, it does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Section 3500 "is the exclusive vehicle for disclosure of statements made by government witnesses." *United States v. Percevault*, 490 F.2d 126, 128–29 (2d Cir. 1974) (citation omitted). And unlike Rule 16, which provides for pre-trial disclosure of the materials covered, § 3500 requires disclosure only "after

the witness has testified at trial." *Id.* at 129.  Explaining Congress's judgment to provide for disclosure of such witness statements only at that point, the Second Circuit has stated, "[t]his unique but limited discovery device [§ 3500] represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial." *Id.*  In particular, the Second Circuit stated, in enacting § 3500, Congress sought to ensure "that witnesses in organized crime cases are produced alive and unintimidated before grand juries and at trial." *In re United States of America*, 834 F.2d 283, 287 (2d Cir. 1987) (citation omitted).

The parties' opposite positions over whether the 911 tape at issue here is covered by Rule 16 derive from their differing views as to whether the tape is covered by § 3500.  The defense argues that it is not, and that the tapes are material to the preparation of the defense, capturing the contemporaneous description by an eyewitness (or ear-witness) of a gathering near the scene of the Phillips murder immediately after that murder of persons who, as described by the caller, may have participated in that murder.  Thus, the defense argues, the tape is covered by Rule 16. The Government responds with three arguments.  Most fundamentally, it argues that 911 phone calls are covered by § 3500 and are therefore are excluded from Rule 16 by Rule 16(a)(2); thus, the Government has no duty to produce the tape (or the redacted information within it) unless and until the 911 caller testifies at trial as a government witness.  Dkt. 788.  Alternatively, the Government argues, this particular 911 tape, call 24, and the identity of the caller, are not "material to the preparation of the defense," and thus fall outside Rule 16.  Finally, the Government argues, even if call 24 fell within Rule 16, redaction of the caller's identifying

information is justified to assure witness safety.  The Court considers these three arguments in turn.[1]

### A.  Scope of Section 3500

As noted, Rule 16(a)(2) excludes from Rule 16's coverage "statements made by prospective government witnesses," because those are governed by § 3500.  Although there is little case law defining the term "statement" as used in Rule 16(a)(2), there is ample authority defining the scope of § 3500.

Important here, the Second Circuit has instructed that "3500 material is, by its very nature, a recitation of past occurrences."  *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974); *accord United States v. Kimoto*, 588 F.3d 464, 491 (7th Cir. 2009) (describing a statement subject to § 3500 as "'a recorded recital of past occurrences made by a prospective prosecution witness'" (quoting *United States v. Sopher*, 362 F.2d 523, 525 (7th Cir. 1966))); *United States v. Skillman*, 442 F.2d 542, 553–54 (8th Cir. 1971) (same); *Davis v. United States,* 413 F.2d 1226, 1231 (5th Cir. 1969) (following *Sopher*).  For this reason, § 3500 material includes recordings of confessions, *Percevault*, 490 F.2d at 127–28, because they are inherently retrospective accounts of past occurrences, and statements to government agents and investigators, *see Goldberg v. United States*, 425 U.S. 94, 102 (1976), but it does not include "a concurrent tape recording of a conversation between the payer and the recipient of an alleged cash bribe," *Sopher*, 362 F.2d at 525, or a recording of a phone call between co-conspirators about an on-going conspiracy, *Skillman*, 442 F.2d at 549, 553.  As the Seventh Circuit has explained, the latter recordings are not "statements" covered by § 3500 because they are "preservation[s] of a conversation just as it was spoken," not "recital[s] of past occurrences."  *Sopher*, 362 F.2d at 525.

---

[1] The ensuing analysis also applies to the redactions of the same identifying information on the sprint runs, which the Court understands to be derivative of the 911 tapes.

This differentiation between "recitations of past occurrences," which constitute § 3500 material not available until trial, and real-time narration of events, the records of which may constitute Rule 16 material, makes sense in light of the different purposes served by Rule 16 and § 3500.  A real-time narration of events may be admissible as a present sense impression, *see* Fed. R. Evid. 803(1), or an excited utterance, *see* Fed. R. Evid. 803(2).  *See United States v. Shoup*, 476 F.3d 38, 42 (1st Cir. 2007) (upholding admission of 911 call made one or two minutes immediately following event); *United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir. 2004) (upholding admission of 911 call reporting that defendant used a gun to threaten girlfriend's mother and sister), *cert. denied*, 546 U.S. 934 (2005); *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir. 1995), *vacated on other grounds*, 516 U.S. 1168 (1996) (upholding admission of statements from 911 tape as a present sense impression); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) ("Certainly, a statement by a 911 caller who is witnessing the violent arrest of a suspect by the police could qualify under either [the present sense or excited utterance] exception."); *United States v. Lloyd*, 859 F. Supp. 2d 387, 395 (E.D.N.Y. 2012) (admitting a 911 call under both exceptions); *United States v. Campbell,* 782 F. Supp. 1258, 1260–61 (N.D. Ill. 1991) (admitting under both exceptions a 911 tape of an eyewitness's description of a gunman).  Because such real-time accounts of emergency situations as they unfold may well be admissible, it is consistent with Rule 16 for defendants to gain access to them along with other potentially admissible tangible items.

In light of the authority defining § 3500 material as inherently capturing "recitation[s] of past occurrences," *Percevault*, 490 F.2d at 131, call number 24, being a 911 call reporting an ongoing crime and/or its immediate aftermath, does not qualify as § 3500 material.  Call number 24 reports an emergency as it occurred.  The caller describes the caller's fears about men then

gathering outside her apartment.  The caller's account is not "a recitation of past occurrences."

*Percevault*, 490 F.2d at 131.  It is instead a real-time play-by-play of events.  Thus, although

§ 3500 "is the exclusive vehicle for disclosure of statements made by government witnesses,"

*Percevault*, 490 F.2d at 128-29 (citation omitted), call number 24 is not such a statement.

Treating it as Rule 16, as opposed to § 3500, material will not interfere with that "exclusive

vehicle."  And treating it as subject to Rule 16 enables defendants to have access to potentially

admissible statements early enough to aid in the preparation of their defense.

### B.   Materiality of Call Number 24 to the Defense

The Court turns, then, to the question whether call number 24 is discoverable under Rule

16.  To qualify for Rule 16, either "(i) the item is material to preparing the defense; (ii) the

government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from

or belongs to the defendants."  Fed. R. Crim. P. 16(a)(1)(E).  The Government represents that it

"has no current plan to offer the call at trial," Dkt. 788, and the recording was not obtained from

the defendant.  The decisive question is thus whether it is "material to preparing the defense."

Fed. R. Crim. P. 16(a)(1)(E).

The "'materiality standard of Rule 16 normally is not a heavy burden . . . .'"  *United*

*States v. Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y. 2007) (quoting *United States v. Lloyd*, 992

F.2d 348, 351 (D.C. Cir. 1993)).  *See also* 2 Charles Alan Wright et al., *Federal Practice and*

*Procedure Criminal* § 254 (4th ed. 2013) ("Too much should not be required in showing

materiality.").  Evidence is material "if it could be used to counter the government's case or to

bolster a defense."  *Stevens*, 985 F.2d at 1180.  "There must be some indication that the pretrial

disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the

quantum of proof in his favor."  *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)

9

(citation omitted).  The defendant must make a *prima facie* showing of materiality, *United States v. Finnerty*, 411 F. Supp. 2d 428, 431 (S.D.N.Y. 2006), and must "offer more than the conclusory allegation that the requested evidence is material," *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003).  "The Government should interpret the language of Rule 16 broadly to ensure fairness to the defendant."  *United States v. Martinez*, 844 F. Supp. 975, 982 (S.D.N.Y. 1994).

The Court concludes that call number 24 is material to the defense to the Phillips murder. The Government argues that call number 24 is immaterial because it reflects events after the Phillips murder, not the murder itself, but that is unpersuasive.  As the defendants note, the call appears to reflect events minutes after the murder, in its vicinity, and involving persons who (based on the caller's words) may have committed it.  It conceivably may provide a different version of events from that presented at trial by the Government, and on that basis is material to the defense.

As the parties have noted, the words on the call as recorded are difficult to understand: The caller is in hysterics and screaming throughout most of the call.  But the caller does appear to state, at 17:17 on the CD,[2] that there are men outside her window who say they killed a man on her block (presumably, just moments ago) and have "problems" with her husband.  She also appears to describe the age and race of the men.

The call thus describes persons who may well have been perpetrators of the murder and was made shortly after the murder occurred.  The defense is entitled to use the tape to explore whether the caller's description of the persons described, and their whereabouts, are consistent with the version of events that the Government will pursue at trial.  In the event that there is an

_____

[2] The call lasts approximately four minutes.  The CD containing the recording of the call contains recordings of other calls, both before and after call number 24.

inconsistency, the defense may seek to introduce the recording at trial.  It is also possible that the account rendered on the tape will lead the defense to pursue other investigative leads as it readies for trial and will lead it to admissible evidence.  To be sure, it is entirely possible that the descriptions on the call will prove consistent with the evidence that the Government presents at trial.  It is possible that the recording will prove to be of little or no use to the defense.  But at this stage, the Court cannot simply so assume:  Trial is months away and the Government has not revealed the narrative of the Phillips murder to which its witnesses will testify at trial.  Given that the burden for an item to qualify under Rule 16 is not heavy, the Court finds there is "some indication that the pretrial disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor."  *Maniktala*, 934 F.2d at 28.

        That said, a redacted version of call number 24 having been produced, the Rule 16 issue here is the narrower one of whether the information identifying the caller is material.  That presents a closer question.  The defense has not articulated a specific theory of why the caller's identity is material, other than to state generally that the defense would like to interview the caller.[3]  The Court has some doubt that a bare desire to interview a witness who placed a 911 call, uncoupled from a concrete explanation as to why interviewing that witness would "enable[] the defendant significantly to alter the quantum of proof in his favor," *Maniktala*, 934 F.2d at 28, makes the witness's identity material.  The Court, however, need not resolve that issue here.  The Court will instead assume *arguendo* that the identity of the caller here is material to the preparation of the defense because identification of eyewitnesses to the immediate aftermath of

---

[3] The defense has not argued, for example, that the location of the caller, coupled with the timing of the call, is such that any person perceived and described by the caller at the time of the call could not plausibly have been at the scene of the Phillips murder.

the Phillips murder may lead the defense—in some way—to develop a theory of innocence or to identify shortcomings in the Government's theory of guilt.

### C.  Validity of the Redaction of Call Number 24

On the assumption that the identity of the caller on call number 24 is material to the preparation of the defense, the Court reaches the issue of whether the Government was justified, under Rule 16, in redacting the caller's identity.

Rule 16(d)(1) provides, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  The Rule "authorizes the district court to limit or otherwise regulate discovery had pursuant to the Rule."  *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991).  "Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation . . . ."  Fed. R. Crim. P. 16, Advisory Committee Notes, 1966 Amendment. "Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed."  Fed. R. Crim. P. 16, Advisory Committee Notes, 1974 Amendment.

On this authority, courts commonly approve of redactions of Rule 16 material or similar means of protecting witness identity.  *See United States v. Fort*, 472 F.3d 1106, 1121 (9th Cir. 2007) (approving of "the government's disclosure of redacted copies of local police reports [sought under Rule 16], where the redactions were consistent and supported by an articulated intention to protect witness identities in the context of a case in which the district court has already found a serious risk of harm to witnesses."); *United States v. Pelton*, 578 F.2d 701, 706 (8th Cir. 1978) (approving the district court's decision to deny defendants access to non-

exculpatory tapes of conversations under Rule 16(d)(1) in order to safeguard the safety of cooperating witnesses); *United States v. Santiago*, 174 F. Supp. 2d 16, 32, 36 (S.D.N.Y. 2001) (in multi-defendant case involving "violent narcotics trafficking enterprise" in the Bronx, requiring, under Rule 16, disclosure of a clearer copy of the photo array that resulted in defendant's identification, but permitting Government not to disclose identity of witness who identified him); *United States v. Bin Laden*, No. 98 Cr. 1023 (LBS), 2001 WL 66314, at *1 (S.D.N.Y. Jan. 26, 2001) (ordering production of Rule 16 material, but subject to redactions to prevent disclosure of identity of government witnesses and, "upon credible showing of danger," of non-witnesses); *cf. Roviaro v. United States*, 353 U.S. 53, 59–61 (1957) (affirming "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," while recognizing that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way . . . [and] the trial court may require disclosure."); *United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987) (although defendant has no right to list of government witnesses, a district court may in its discretion order the government to produce such a list, and may take into account concerns about witness safety). The same consideration of witness safety has been held to justify deferred production of § 3500 material. *United States v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y. 2005) ("[C]ourts in this circuit are especially reluctant to require the disclosure of witness lists in cases such as this one that involve allegations of crimes of violence."); *United States v. Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005) (the disclosure of a witness list "is particularly

inappropriate in this case, which involves charges of violent crimes, where the witnesses will include cooperating individuals and victims.").

The Government here argues that redacting the witness's name is justified to assure witness safety. Having listened to the 911 call, the Court agrees. Based on her own words on the call, the caller on call number 24 was in fear for her life when she called 911 the night of September 3, 2005. In hysterics, she repeatedly tells the 911 operator, who tries in vain to calm her down, that she is five months pregnant, that the men outside are going to kill her, and that she does not want to die. It would be hard to invent words spoken on a call that more explicitly validate a concern about witness safety. The Court is, further, mindful that the Superseding Indictment charges that these three defendants participated in the Phillips murder; that one defendant (Urena) was a participant in other murders; and that the BTG, with which all three defendants are alleged to have been affiliated, was responsible for a substantial number of murders in its neighborhood in the Bronx. The Court has also presided over numerous guilty pleas and sentencings in connection with this case, and has reviewed sentencing materials sufficient to corroborate multiple gang members have committed numerous retributive violent actions. Although the caller of call number 24 does not explain why she is afraid that the people massed outside her door will target her, it is clear that she has this fear. It is reasonable to conclude that revealing her name or address might tend to jeopardize her safety.

The Court therefore holds that the Government has shown good cause for its redaction of the caller's identifying information. There has been no suggestion by the defense that the identity of the caller is somehow exculpatory of the defendants, or that the caller is in possession of exculpatory evidence. The analysis above would perforce be different if there were a credible claim that redacting the caller's identity deprived the defense of exculpatory evidence.

14

## CONCLUSION

For the reasons expressed, the Court declines to order the Government, at this time, to disclose the identity of the caller on call number 24. The redaction of the caller's identity was amply justified on safety grounds. This ruling is without prejudice to the defense's right, at a later day, to pursue anew disclosure of the witness's identity, should the defense be able to articulate a more convincing theory as to why disclosure of that identity would be material to the preparation of the defense and sufficiently material to outweigh the Government's concerns about safety.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 10, 2013
       New York, New York

15