```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
UNITED STATES                                             :
                                                          :   S5 11 Cr. 1032 (PAE)
             -v-                                          :
                                                          :   OPINION & ORDER
CARLOS URENA and LIMET VASQUEZ,                           :
                                                          :
                                    Defendants.           :
                                                          :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Trial in this case, which involves allegations of racketeering, murder, and narcotics trafficking associated with an alleged enterprise known as the Trinitarios Gang, began on March 10, 2014. On March 11, 2014, the Government filed a motion asking that the Court: (1) close the courtroom to all spectators—save for the defendants' immediate families—during the upcoming testimony of an undercover detective ("UC-188") who purchased drugs and firearms from members of the gang; and (2) permit UC-188 to testify under an alias. Dkt. 1037. To minimize prejudice to the defendants' or the public's right to an open trial, the Government proposes to set up a live audio feed of UC-188's testimony to a separate room and work with the court reporters to ensure that a daily transcript of UC-188's testimony is made available to the public within 24 hours. *Id.* On March 24, 2014, defendant Carlos Urena submitted a letter opposing the Government's motion, Dkt. 1059, in which defendant Limet Vasquez joins.

**I.    Facts**

The facts relevant to the pending motion have not been disputed. The Court therefore makes, and premises its decision on, the following findings of fact:

1)    UC-188 is a member of the Gang Squad of the Organized Crime Control Bureau of the New York Police Department ("NYPD").

      2)       There are currently only eight active members of the Gang Squad.

      3)       As part of a long-term undercover operation run by the Gang Squad, UC-188 purchased drugs and firearms from members of the Trinitarios Gang on blocks allegedly controlled by the Trinitarios Gang.

      4)       UC-188 continues to participate in undercover operations into large-scale drug trafficking organizations—including by making undercover drug purchases—in the Bronx and other parts of the New York region.

      5)       Members of the Trinitarios Gang have been convicted of committing numerous acts of violence.

      6)       If UC-188's identity became known to members of the Trinitarios Gang, his safety during such operations could be jeopardized.

      7)       Because members of the Gang Squad often conduct joint operations with other undercover agents from the same squad, revealing UC-188's identity could also endanger other members of the Gang Squad.

      8)       Revealing the identity of UC-188 would also potentially undermine ongoing Gang Squad investigations.

## II.    Courtroom Closure

The Sixth Amendment directs, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" The Supreme Court has "uniformly recognized the public-trial guarantee as one created for the benefit of the defendant." *See Presley v. Georgia*, 558 U.S. 209, 213 (2010) (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). However, the Court has taught, "the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.*

The Supreme Court has established a four-factor test for determining whether an aspect of a trial may be closed to the public.

1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced;

2) The closure must be no broader than necessary to protect that interest;

3) The trial court must consider reasonable alternatives to closing the proceeding; and

4) The trial court must make findings adequate to support the closure.

*Presley*, 558 U.S. at 213–214 (citing *Waller*, 467 U.S. at 48).

Here, the "overriding interest" in closure advanced by the Government is to protect UC-188's safety, and that of his undercover colleagues, and to preserve his ability to continue serving as an undercover detective in the New York City area. The Second Circuit has previously addressed this scenario, and has repeatedly held that "courts may properly order courtrooms closed during the testimony of undercover police officers, in order to protect both the officers' safety and their future effectiveness." *Gonzalez v. Quinones*, 211 F.3d 735, 738 (2d Cir. 2000) (citing cases); *see also Brown v. Artuz*, 283 F.3d 492, 501 (2d Cir. 2002) (the "safety of a police officer working undercover surely constitutes an overriding interest"). In *Ayal v. Speckard*, the Second Circuit, *en banc*, stated that:

> The State's interest in maintaining the continued effectiveness of an undercover officer *is an extremely substantial interest*, and the trial judge in each case was amply justified in concluding that this interest would be *seriously prejudiced by requiring the officer to testify in an open courtroom*. There is no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity. Of course, the defendant himself has an opportunity to observe the officer (a second opportunity, if the defendant is guilty), and might communicate a description of the officer to others, particularly if the defendant is at liberty pending trial. The defendant's right of presence at his trial requires accepting that risk, but the right to a public trial does not require the further risk that the officer's identity will become known through observation by members of the public who might enter the courtroom and see the officer testifying. The gravity of the state interest in protecting the secrecy of the officer's identity from casual observers and the likelihood that this interest will be prejudiced by the officer's testifying in open court are both sufficiently substantial to justify the limited closure of the courtroom during the officer's testimony.

131 F.3d 62, 72 (2d Cir. 1997) (en banc) (emphases added).  The Government's interest in closure here is, therefore, properly held to be extremely substantial.

The Government's interest must, of course, be weighed against the harm such closure would cause to the defendants' right to an open trial.  As the Second Circuit has stated:

> [T]he sensible course is for the trial judge to recognize that open trials are strongly favored, to require persuasive evidence of serious risk to an important interest in ordering any closure, and to realize that the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest.

*Ayala*, 131 F.3d at 70.  In analyzing the extent of infringement, courts consider the testimony to be rendered during closure, the duration of the anticipated closure, and the relationship of those excluded to the objecting defendant.  *See Bobb v. Senkowski*, 196 F.3d 350, 353 (2d Cir. 1999).  Where the "closure [is] brief and the testimony given during closure [is] merely corroborative . . . the State's burden [is] not a heavy one, and the limited likelihood that the undercover officer's safety would be prejudiced by an open courtroom . . . ha[s] sufficient weight in the balance."  *Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir. 1998).

Here, the extent of the anticipated closure is slight.  The Government proposes to close the courtroom during only the testimony of one witness, UC-188.  And UC-188's testimony as to the fact of undercover purchases from alleged gang-affiliated persons is not game-changing.  It is instead offered principally to corroborate other evidence, to wit, the substantial evidence of narcotics and firearms trafficking by Trinitarios gang members in the affected Bronx sites that either has been received, or, the Government represents, will be received.  As projected by the Government, this evidence will consist of the testimony of seven cooperating witnesses (three of whom have already testified) and law enforcement and civilian witnesses.  The Government will also introduce tangible evidence corroborating such testimony, including transcripts of phone

calls intercepted by wiretaps in which narcotics trafficking is discussed, and the fruits of sales of narcotics and guns.

Furthermore, the Government has committed to taking steps to reduce the harmful effects of the proposed closure. These include: (1) establishing a live audio feed of UC-188's testimony in a separate room in the courthouse; (2) ensuring that transcripts of UC-188's testimony will be promptly released to the public; and (3) permitting the defendants' immediate family members to remain in the courtroom during UC-188's testimony. This last step is particularly significant—if not required outright—under Second Circuit caselaw. *See, e.g.*, *Smith v. Hollins*, 448 F.3d 533, 539 (2d Cir. 2006) ("Under *Waller* and its progeny, courts must undertake a more exacting inquiry when excluding family members, as distinguished from the general public[.]") (citation omitted); *Vidal v. Williams*, 31 F.3d 67, 69 (2d Cir. 1994) ("[T]he Supreme Court has specifically noted a special concern for assuring the attendance [at trial] of family members of the accused.").

Therefore, under the first two prongs of the *Waller* test, the Court concludes that the Government's proposed closure in this case is no broader than necessary to protect UC-188's safety and the viability of ongoing NYPD investigations, both of which the Court finds to be interests of overriding importance.

The third prong of the *Waller* test requires that the Court consider reasonable alternatives to closing the proceeding during UC-188's testimony. Urena's opposition letter does not offer concrete alternatives to the limited courtroom closure the Government proposes. Nevertheless, the Court has considered, *sua sponte*, other options, such as disguising the undercover officer or placing a screen between the witness and the courtroom spectators. The Court's judgment is that these alternatives would be materially more problematic and harmful than the proposal for a

limited closing of the courtroom.  As the Second Circuit has noted, "disguising the witness risks lessening the jury's opportunity to observe the witness's demeanor and assess credibility, and a screen risks implying to the jury that the family or friends of the defendant in attendance are likely to be dangerous." *Ayala*, 131 F.3d at 71–72.  By contrast, the Government's proposal here ought not interfere with the jury's ability to assess UC-188's credibility, nor convey to the jury any risk of danger.   The Court finds that the Government's proposal is the best available option for shielding the identity and protecting the safety of UC-188, while limiting, to the extent possible, any infringement on the defendants' right to an open trial.  *Accord United States v. Hernandez*, No. S1 12 Cr. 809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013).

Based on the Court's analysis of the *Waller* factors above, the Government's request to close the courtroom for the testimony of UC-188—in the limited manner proposed—is justified. Accordingly, the Government's motion to close the courtroom during UC-188's testimony is granted.

## III. Testimony Under an Alias

The Government additionally requests an order allowing UC-188 to testify at trial without providing his true name.  To limit any prejudice, the Government will provide the defendants, as it must, with *Giglio* and Jencks Act information, if any, associated with UC-188. The Government will also, upon request, provide the defendants' counsel with UC-188's true name under a stipulation and/or protective order, which disclosure will enable counsel to conduct an independent investigation as to this witness, should counsel wish to do so.  The stipulation and/or protective order would, however, prevent defendants' counsel from:  (1) providing UC-188's true name to the defendants; and (2) eliciting UC-188's true name in open court.

Although the Confrontation Clause of the Sixth Amendment guarantees criminal defendants the right to cross-examine adverse witnesses, *see Smith v. Illinois*, 390 U.S. 129, 133 (1968), this right is not absolute, and a trial court has broad discretion to restrict cross-examination "based on concerns about, among other things . . . the witness's safety," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The New York Court of Appeals follows a useful three-step inquiry when the prosecution seeks to shield a witness's identity, address, or occupation. *See People v. Stanard*, 42 N.Y.2d 74, 84 (1977).

1. First, the objecting party "must come forward with some showing of why the witness should be excused from answering the question. Excuse may arise from a showing that the question will harass, annoy, humiliate or endanger the witness." *Id.*

2. Second, the burden "shifts to the questioning party to demonstrate the materiality of the requested information to the issue of guilt or innocence." *Id.* (citations omitted). To establish materiality, the defendants must show: "(1) the extent to which the right to cross-examine is infringed, (2) the relevance of the testimony to the question of guilt or innocence, (3) the nature of the crime charged and the quantum of proof established aside from the testimony of the witness, (4) the nature and significance of the interest or the right asserted by the witness, and (5) the nature of and extent to which the proposed cross-examination would produce evidence favorable to that party and, of course, whether such evidence would be merely cumulative." *Id.*

3. Third, the Court must, "in the exercise of discretion, weigh the various interests involved and determine whether the testimony is sufficiently material to the question of guilt or innocence to overcome the interest of the opposing party. In determining materiality the court is required to keep in mind that the underlying purpose of identity testimony is to establish a background setting in which to test veracity." *Id.*

Here, as noted, the Government seeks to restrict the defense from eliciting UC-188's true name during cross-examination. The justification for this limitation is the same as the justification for closing the courtroom—to protect UC-188's personal safety and the viability of his current and future undercover investigations. As in *Stanard*, this is "a sufficient interest to shift the burden of proving necessity and materiality to the defendant[s]." *Id.* at 84–85 (citations omitted).

Defendants' letter in opposition fails to demonstrate the materiality of UC-188's real name to any issue of guilt or innocence. Rather, defendants appear to concede implicitly, as appears clearly correct, that UC-188's true name is immaterial to defendants' guilt or innocence. The defendants will have access to all *Giglio* material associated with UC-188's true name, and will be able to freely cross-examine him on all topics other than his identity. Moreover, nothing about UC-188's real name goes to his credibility or knowledge regarding the subject of his testimony. The limitation imposed on the defense is therefore negligible. The Government's interest in protecting UC-188's safety and his viability as an undercover asset overwhelmingly outweighs the defendants' interest in public disclosure of his true name.

That said, the Court agrees with defendants that having UC-188 testify under a transparent code name, such as UC-188, might unhelpfully imply to the jury that defendants are dangerous. The better course, in the Court's judgment, is for UC-188 to testify under an alias, which would eliminate any suggestion to the jury of irregularity or danger. *See Hernandez*, 2013 WL 3936185, at *3 (granting Government's motion to permit an undercover agent to testify using an alias); *Washington v. Walsh*, No 08 Civ. 6237 (DAB), 2010 WL 423056 (S.D.N.Y. Feb. 5, 2010) (a law enforcement officer "testifying under a badge number rather than his name does not infringe upon a defendant's right to confront the witnesses against him") (collecting cases). In this way, UC-188's true identity will be protected in a way that avoids drawing the jury's attention to the prophylactic measures taken by the Court.

## CONCLUSION

For the reasons stated above, the Government's motion is granted. The courtroom will be closed to the public—but not to the defendants' immediate family—for the limited period during which UC-188 will testify, and UC-188 will be permitted to testify at trial without mentioning his true name. The Government is directed to arrange all accommodations promised in its

8

motion, and to give both the Court and the defendants 24 hours notice of its intention to call UC-188 to testify.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 31, 2014
      New York, New York